## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Kent Gard,** | | **Case No. 1:20cv125** |
| | **Plaintiff,** | |
| **-vs-** | | **JUDGE PAMELA A. BARKER** |
| **Grand River Rubber & Plastics Company,** | | **MEMORANDUM OPINION AND ORDER** |
| | **Defendant** | |

Currently pending is Plaintiff Kent Gard's Motion to Compel Jason Brand to Comply with Fed. R. Civ. P. 45 Subpoena.  (Doc. No. 48.)  Defendant Grand River Rubber & Plastics Company filed a Brief in Opposition, and Third-Party Witness Jason Brand filed a Response on December 4, 2020.  (Doc. Nos. 49, 51.)  Plaintiff filed a Reply on December 11, 2020.  (Doc. No. 52.)  Also pending are Position Papers recently submitted by Plaintiff and Defendant on December 30, 2020 regarding a discovery dispute relating to Plaintiff's request for documents relating to Defendant's communications with Jason Brand.

For the following reasons, Plaintiff's Motion to Compel (Doc. No. 48) is GRANTED as set forth herein.  In addition, the Court finds Plaintiff's Position Paper to be well-taken and orders Defendant to produce the documents submitted to this Court for *in camera* inspection to Plaintiff by no later than seven (7) days from the date of this Order.

## I.      Procedural Background

On January 20, 2020, Plaintiff Kent Gard (hereinafter "Gard") filed a Complaint in this Court against Defendant Grand River Rubber & Plastics Company (hereinafter "Grand River").  (Doc. No. 1.)  Therein, Gard alleges that he was hired by Grand River in January 2017 as its Manufacturing

Manager.  (*Id*. at ¶ 10.)  Gard alleges that, at the time of his hire, he was over 40 years old and had significant experience in managing manufacturing personnel.  (*Id*. at ¶¶ 9, 11.)  Gard alleges that he "excelled during his career with Defendant" and "regularly met and exceeded Defendant's performance expectations."  (*Id*. at ¶ 11.)

In February 2017, Gard suffered a heart attack and was diagnosed with kidney failure.  (*Id*. at ¶ 12.)  Thereafter, Grand River's President, Donald Chaplin, began "voicing concerns about the cost of providing Plaintiff's health insurance benefits."  (*Id*. at ¶ 13.)  Specifically, in August 2017, Chaplin spoke with Gard and "complained that [Gard's] healthcare was too costly to the company and tried to convince [Gard] to waive his insurance coverage under Defendant's health plan."  (*Id*.)  In addition, Gard alleges that Chaplin spoke about his concerns regarding the cost of Gard's healthcare with others in the company, including with Grand River's then-Executive Vice-President Jason Brand.  (*Id*. at ¶ 16.)

On April 19, 2019, Gard's physician informed him that he would likely receive a kidney transplant within the next year.  (*Id*. at ¶ 18.)  Gard advised Grand River's management, "so that Defendant would be prepared to accommodate an eventual medical leave and maintain him on its health insurance plan."  (*Id*.)

On May 10, 2019, Grand River terminated Gard's employment, "citing corporate restructuring as the reason for [his] termination."  (*Id*. at ¶ 19.)  Thereafter, Grand River created a new Chief Operating Office ("COO") position.  (*Id*. at ¶ 21.)  Gard alleges that Grand River did not allow him to apply for it.  (*Id*.)  According to Gard, the COO position has since been filled with an employee who is substantially younger than Plaintiff and who is not disabled.  (*Id*. at ¶ 22.)  In

2

addition, Gard alleges that "a portion of [his] job responsibilities have since been reassigned to a different employee who is substantially younger than [Gard] and who is not disabled." (*Id*. at ¶ 23.)

The Complaint alleges the following counts: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. and state law (Counts One and Two); (2) disability discrimination under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and state law (Counts Three and Four); (3) retaliation under the ADA and state law (Counts Five and Six); and (4) interference and retaliation under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140.

Shortly after filing the Complaint, on January 28, 2020, Gard secured an affidavit from Jason Brand. (Doc. No. 48-2.) Therein, Brand states that he worked for Grand River for nine years, eventually becoming the Vice President of Operations, but that his employment with Grand River "was recently terminated." (*Id*. at ¶ 2.) He explains that, prior to his termination, he worked with Gard and with Grand River's President Donald Chaplin. (*Id*. at ¶ 3.) Brand avers that Gard "admirably performed his job duties," noting in particular that (1) the lathe cut operations became profitable under Gard's watch; (2) Gard wrote good reports on how to improve performance within the plant; and (3) there were dramatic cost reductions in the Secondary Operations division after Gard assumed control of that division. (*Id*. at ¶ 6.)

In addition, and of particular relevance to Gard's claims, Brand avers as follows:

8.   Donny [Chaplin] and I would regularly meet for breakfast on Monday mornings at Lunch Box, a diner around the corner from Grand River's facility.  During these meetings, we would discuss the operations of the plant.  At some point in late 2017, after Kent had returned from medical leave, Donny stated to me at one of these breakfast meetings that he wanted to "ask Kent to drop our insurance and go onto his wife's insurance."  I responded by saying: "I don't think that's a good idea."

3

9.  Grand River maintained a self-insured health plan, by which the company paid an employee's health costs until that employee's costs reached the "stop-loss" limit. As I understand it, once the stop-loss limit is reached, additional healthcare expenses for that employee are passed on to the stop-loss insurer. When Grand River has to make a claim against that stop-loss insurance policy, those claims could increase Grand River's cost of buying future stop-loss policies.

10.  Donny knew what each employee was costing the company in terms of medical expenses and would frequently comment about how much certain employees were costing the company due to healthcare expenses.

11.  A day or two after having this conversation with Donny, Kent told me that Donny had approached him and asked him to go off of Grand River's insurance. Kent was agitated and upset by the situation, and told me, "I don't think that's right." He also said that he had spoken to a lawyer about the situation.

12.  Approximately three (3) weeks after having this discussion with Kent, Donny came into my office and, with the door left open, said that he had "not heard back from Kent" on the issue of dropping off the company's insurance. I responded by telling Donny that he should "let sleeping dogs lie in this situation."

13.  In early 2019, Donny again came into my office, but this time shut the door. He then told me: "I figured out a way that Kent can go on Medicare to get his kidney transplant." At the time, I did not even know that Kent was going to have a kidney transplant, and Donny did not tell me how he knew. I just responded, "Um -okay."

14.  In May 2019, Donny called me into his office and told me: "We're going to part ways with Kent" and "we're going to bring Keith [Wyatt] in." Donny had not consulted me on this decision, even though I supervised Kent directly. I told Donny that the last two years had been the best the company had done and that Kent had met all his requirements.  I then asked why Donny had made this decision, and he replied by saying that "Grand River was 'reorganizing' and that the set-up that you have isn't working." I asked whether Donny would like me in the meeting to terminate Kent's employment, and Donny said no.

15. After Kent's termination. the set-up of the Grand River facility did not significantly change.

(*Id*. at ¶¶ 8-15.)

Grand River filed an Answer on March 19, 2020, and a Case Management Conference was thereafter conducted on April 28, 2020.  (Doc. Nos. 9, 16.)  During the CMC, the Court set various

case management deadlines, including a discovery deadline of September 30, 2020. (Doc. No. 16.) In addition, at the parties' request, the matter was referred for mediation. (Doc. No. 19.) Magistrate Judge Baughman conducted a mediation conference on August 27, 2020, which was not successful. (Doc. No. 26.) In order to facilitate further mediation proceedings, the Magistrate Judge ordered the parties to complete certain depositions, including the deposition of Brand. (*Id.*) The discovery deadline was later extended to November 13, 2020.

On September 2, 2020, Grand River issued a subpoena to Brand for his deposition, as well as the production of "[a]ny and all documents, correspondence, text messages, or any other communication with Kent Gard or any representative of Kent Gard." (Doc. No. 29.) Brand's deposition was scheduled for October 13, 2020 at the offices of Gard's counsel. (Doc. No. 48-3.)

On October 13, 2020, counsel and witnesses appeared for Brand's deposition. However, Grand River abruptly, and without explanation, withdrew its subpoena. (Doc. No. 48-1 at pp. 2-3.) In addition, according to Gard, "counsel for Brand advised Plaintiff's counsel in vague terms that the withdrawal of Defendant's subpoena may have affected his client's obligations, that he would need additional time to look into the matter, but that his client was not prepared to provide testimony that morning." (*Id.* at p. 3.)

On October 19, 2020, Gard issued a subpoena for Brand's testimony, scheduling a deposition for November 6, 2020. (Doc. No. 42.) Brand did not formally object to the subpoena. However, on November 2, 2020, Brand's counsel sent an email to Gard's counsel in which he advised that Brand was not in a position to appear at the deposition and that he could not provide further explanation as to why. (Doc. No. 48-4.)

On November 3, 2020, Gard submitted a Position Paper to the Court explaining the above turn of events and requesting an Order compelling Grand River to produce any document reflecting any sort of arrangement between Grand River and Brand that in any way affects or purports to affect Brand's ability to cooperate with the provision of testimony in this case.  (Doc. No. 45.)  Grand River submitted a response on November 6, 2020, to which Gard replied on November 9, 2020.  (*Id.*)  On November 17, 2020, the Court issued an Order finding Gard's position to be well taken and requiring Grand River to produce the requested documentation, if any, by November 19, 2020.  (*Id.*)

Grand River thereafter produced a copy of a "Severance and General Release of Claims Agreement" between itself and Brand (hereinafter referred to as "Severance Agreement") dated February 4, 2020.  (Doc. No. 48-6.)  Among other things, this Agreement contains the following non-cooperation and non-disparagement provisions:

> 6.      Employee waives any right to in any way voluntarily assist any individual or entity in commencing or prosecuting any action or proceeding including, but not limited to, any administrative agency claims, charges or complaints and/or any lawsuit against Employer or to in any way voluntarily participate or cooperate in any such action  or  proceeding, except as such waiver is prohibited  by law.

> 7.      Employee agrees not to disclose any information regarding the existence or substance of this Agreement, except to an attorney with whom Employee chooses to consult regarding his consideration of this Agreement and/or to Employee's accountant, tax attorney, and federal, state and local tax authorities.  Employee agrees not to criticize, denigrate, or disparage Employer, its Directors, officers, employees, customers, suppliers or affiliates.

(*Id*. at PageID# 253.)

On November 20, 2020, Gard filed the instant Motion to Compel Jason Brand's Deposition. (Doc. No. 48.)  Grand River filed a Brief in Opposition and Brand filed a Response to Gard's Motion on December 4, 2020.  (Doc. Nos. 49, 51.)  Gard filed a Reply on December 11, 2020.  (Doc. No. 52.)  Subsequently, on December 30, 2020, the parties submitted contemporaneous Position Papers

to the Court regarding a discovery dispute relating to Gard's request for documents relating to Grand River's communications with Brand from July 6, 2020 to the present.

## II.    Legal Standard

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1).  "Relevance is construed very broadly for discovery purposes." *Doe v. Ohio State Univ*., 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018) (citations omitted)).  The concept of relevance, however, is not unlimited.  *Averett v. Honda of Am. Mfg., Inc*., 2009 WL 799638 at *2 (S.D. Ohio March 24, 2009).  While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)).  *See also Gallagher v. Anthony*, 2016 WL 2997599 at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas.  Under Rule 45, parties may command a nonparty to, among other things, testify in deposition and/or produce documents.  Fed. R. Civ. P. 45(a)(1).  Rule 45 further provides that "the issuing court must quash or modify a subpoena that ...requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [ ] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  *See United States v. Tenn. Walking Horse Breeders' and Exhibitors Ass'n*, 727 Fed. Appx 119, 123 (6th

7

Cir. 2018) ("A court must protect a non-party subject to a subpoena if it 'requires disclosure of privileged or other protected matter' or the subpoena 'subjects a person to undue burden.'") (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii-iv)).

Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted).   Under that Rule,  district courts may take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.,* 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  Indeed, "'[i]t is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

## III.    Analysis

The Court will address the parties' arguments regarding (1) Gard's Rule 45 subpoena for Brand's deposition; and (2) Gard's document request to Grand River regarding documents relating communications with Brand separately, below.

### A.        Mr. Brand's Deposition

8

In his Motion to Compel, Gard asks the Court to issue an Order compelling Brand to comply with Gard's Fed. R. Civ. P. 45 subpoena. (Doc. No. 48.) Gard asserts that Brand was properly served with the subpoena and, further, that his testimony is relevant and falls well within the appropriate scope of discovery since Brand was "heavily involved in all aspects of [Gard's] employment" and participated in "at least three conversations with [Mr. Chaplin] in which Chaplin expressed concern about [Gard's] healthcare costs." (*Id*. at p. 5.) Gard asks the Court to reject Grand River's "contractual attempt to muzzle Brand's testimony," arguing that the non-cooperation and non-disparagement provisions of the Severance Agreement are void and contrary to public policy to the extent they purport to obstruct or limit Brand's sworn testimony in response to a subpoena. (*Id*. at pp. 5-8.) Finally, Gard asks the Court to hold in abeyance any determination as to "who is responsible for the payment of expenses and attorneys' fees, until further information is obtained about what necessitated this Motion." (*Id*. at p. 8.)

In its Brief in Opposition, Grand River requests a protective order under Fed. R. Civ. P. 26(c)[1] based on the Severance Agreement. (Doc. No. 49 at p. 2.) Grand River asserts that that Agreement

---

[1] Rule 26 authorizes the Court "for good cause shown" to issue a protective order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig*., 845 F.3d 231, 236 (6th Cir. 2016) (internal citation omitted). The Court notes that "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Diamond Resorts Int'l, Inc. v. Phillips*, 2018 WL 4328257 at *2 (M.D. Tenn. July 16, 2018) (quoting 9A Charles Alan Wright and Arthur R. Miller, et al., Federal Practice and Procedure § 2549 (3d ed.)); *see also White Mule Co. v. ATC Leasing Co., LLC*, 2008 WL 2680273 at *4 (N.D. Ohio June 25, 2008) ("In the absence of a claim of privilege, propriety interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party.") (internal citations omitted). However, "where a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf." *Diamond Resorts*, 2018 WL 4328257 at *2. Here, Gard does not challenge Grand River's standing to oppose the subpoena issued to Brand. Moreover, Grand River states that it has "an interest in moving the Court to deny the motion to compel based upon the negotiated severance agreement." (Doc. No. 49 at p. 2.) Accordingly, and under the particular circumstances presented, the Court will consider Grand River's Brief in Opposition to Gard's Motion to Compel.

9

precludes Brand's deposition because there is no evidence of "fraud, duress, or lack of consideration to provide this Court with any public policy reason to rule that the provisions in the Severance Agreement are against public policy." (*Id*. at p. 5.)  Grand River maintains that Gard's Motion should be denied because Brand's deposition "would disturb the Severance Agreement" and "Plaintiff points to no similar claim or lawsuit by Jason Brand that would give relevance to Plaintiff's allegation." (*Id*.)  Grand River asserts that "it is abundantly clear that Jason Brand cannot provide truthful testimony  no matter what the Court does" in light of the fact that he "knowingly accepted the terms of the Severance Agreement, [but] meanwhile provided a Declaration with the assistance of Plaintiff's counsel in this matter." (*Id*. at p. 6.)

Lastly, Grand River complains that Gard failed to produce evidence of communications that he (or his counsel) had with Brand regarding Mr. Brand's Declaration. (*Id*. at p. 3.)  Although Grand River ultimately obtained this evidence from Brand's counsel, Grand River objects that "Plaintiff's counsel did not disclose [that] the emails even existed with Jason Brand or other drafts of the Declaration of Jason Brand" in response to Grand River's discovery requests. (*Id.* at p. 3.)

In response, Gard argues that the Severance Agreement does not "override Rule 45 or Brand's obligation to tell the truth under oath." (Doc. No. 52.)  He asserts that "[t]here is no authority supporting the proposition that a litigant can prevent this Court from ordering a witness to appear by way of a secret, private agreement." (*Id.* at p. 2.)  Gard reiterates that he is not seeking the "complete invalidation" of the Severance Agreement but only an Order declaring as null and void those provisions that offend public policy; i.e., the non-cooperation and non-disparagement provisions. (*Id.* at p. 4.)  In addition, Gard asks the Court to provide "clear guidance as to the scope of Brand's testimony" because he believes that Grand River is attempting to influence Brand's testimony by

10

threatening him with civil liability. (*Id*. at pp. 5-7.) Gard also asserts that he properly withheld

production of communications between his counsel and Brand on the basis of attorney work product.

(*Id*. at fn 4.)

Finally, as noted above, Brand filed a separate Response to Plaintiff's Motion. (Doc. No. 51.)

Therein, Brand states that his testimony "must be facilitated by a Court Order" and that he "is

prepared to comply with any Order issued by the Court." (*Id*. at p. 2.)

For the following reasons, Gard's Motion to Compel the deposition of Jason Brand is granted.

As an initial matter, the Court finds that Brand's testimony is likely to lead to the discovery of relevant

evidence. As discussed above, Brand's Affidavit demonstrates that he has personal knowledge

regarding (1) Gard's work performance while employed at Grand River, and (2) the timing and

content of alleged statements by Chaplin regarding the cost of Gard's healthcare. (Doc. No. 48-2.)

The Court agrees with Gard that Brand's testimony regarding these issues is potentially relevant to

several issues in the case, including most notably the issue of whether Grand River's decision to

terminate Gard was pretextual. *See Wendt v. Walden University*, 1996 WL 84668 at * 2 (D. Minn.

Jan. 16, 1996) (noting that "in employment discrimination cases, the testimony of co-workers is often

the most probative of evidence. The evidence is often not just relevant, but indispensable.")

Although unclear, Grand River appears to suggest that Brand's testimony is not relevant

because "Plaintiff has shown no similar claim or anything relevant relating Jason Brand to Plaintiff

Kent Gard." (Doc. No. 49 at p. 3-4.) Specifically, Grand River states that "[t]his is not the type of

case where there was a known claim of Jason Brand against Kent Gard that provides a similar pattern

or history relevant to Kent Gard's allegations." (*Id*. at p. 4.) The Court finds Grand River's argument

to be without merit. Under the particular circumstances presented herein, the issue of whether or not

11

Brand has a "known claim" against Gard or, alternatively, a discrimination and/or ERISA claim similar to Gard's against Grand River, is not dispositive of the issue of relevance.   Rather, as discussed above, Brand's testimony is likely to lead to the discovery of evidence relevant to Gard's claims because it potentially goes to the issue of pretext.  Indeed, Grand River does not offer any argument that Brand's testimony is somehow not potentially relevant to pretext.  Accordingly, the Court finds that Gard has satisfied the relevancy standard under Rule 26(b)(1).

Grand River next argues that the Severance Agreement between itself and Brand precludes Brand's deposition testimony entirely.  (Doc. No. 49.)  Grand River asserts that Brand voluntarily accepted the terms of the Severance Agreement and that allowing his deposition would improperly "disturb" that Agreement.  (*Id*. at p. 5.)  It argues that there is "no reason to rule that the provisions in the Severance Agreement are against public policy" and that "any type of agreement would fall under Fed. Evid. R. 408 and 501."  (*Id*. at p. 5.)

The Court is not persuaded by Grand River's argument that the Rule 45 subpoena of Brand should be quashed based upon the Severance Agreement.  Certainly, the Court is aware that parties have the freedom to voluntarily settle disputes via confidential settlement and severance agreements.  The Court also does not question the public policy considerations that encourage the voluntary settlement of claims.  However, "despite this freedom to contract, the courts must carefully police the circumstances under which litigants seek to protect their interests while concealing legitimate areas of public concern."  *Kalinauskas v. Wong*, 151 F.R.D. 363, 365-366 (D. Nev. 1993).  *See also Williams v. Nex-Tech Wireless LLC*, 2016 WL 11468885 at * 3 (D. Kan. June 23, 2016); *Wendt v. Walden University, Inc*., 1996 WL 84668 at * 2 (D. Minn. Jan. 16, 1996).

Indeed, under similar circumstances, courts have found that a defendant "should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." *Williams,* 2016 WL 11468885 at * 3.  *See also Wendt*, 1996 WL 84668 at * 2 (same); *Kalinauskas*, 151 F.R.D. at 365 (finding that "settlement agreements which suppress evidence violate the greater public policy"); *Channelmark Corp. v. Destination Products International, Inc*., 2000 WL 968818 at * 5 (N.D. Ill. July 7, 2000) ("The public reaps no benefit by allowing settlement agreements to suppress evidence.")  Moreover, "even when private confidentiality agreements are enforced, not all *factual matters* concerning the settled case will necessarily be muzzled; often courts will protect the terms of the settlement but will not allow a confidentiality agreement to prevent discovery directed to witnesses who can testify to otherwise admissible factual matters." *General Steel Domestic Sales LLC v. Steelwise LLC*, 2009 WL 185614 at * 8 (D. Colo. Jan 23, 2009) (emphasis in original).  *See also Channelmark Corp*., 2000 WL 9688818 at * 5.

For example, in *Williams v. Nex-Tech Wireless LLC*, 2016 WL 11468885 (D. Kan. June 23, 2016), plaintiffs brought suit against their former employer, Nex-Tech Wireless ("NTW"), for alleged violations of the ADEA and Title VII.  During discovery, plaintiffs subpoenaed the depositions of two former management level employees of NTW, each of whom had entered into Severance Agreements at the time of their departures which included non-disparagement provisions.  *Id*.  at * 1.  NTW filed motions to quash and for protective orders, arguing that the former employees should be precluded from testifying about a variety of topics including any "negative statements" about NTW.  *Id.* at * 2.  The district court denied NTW's motions, as follows:

> The court is also not persuaded by defendant's contentions that the deposition subpoenas of [former employees] Kisner and Rogers should be quashed based upon

the Separation Agreements. While parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. Defendants should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another. While confidential settlements frequently benefit society, the court finds, after balancing the interests, that defendant has not met its burden to prohibit the depositions of Kisner and Rogers. The record before the court demonstrates that Kisner and Rogers have information that plaintiffs should be allowed to discover. Employment at NTW is a matter of legitimate public concern, and NTW should not be able to conceal basic facts that concern plaintiffs' claims. The existence of the Separation Agreements should not be an obstacle to plaintiffs' inquiries. Public policy weighs in favor of enforcing plaintiffs' subpoenas because the testimony of Kisner and Rogers is likely to lead to the discovery of relevant evidence. Defendant's motion to quash the subpoenas of Rogers and Kisner is denied.

*Id*. at * 3 (footnotes and internal citations omitted). Several other courts have reached the same conclusion under similar circumstances. *See, e.g., Kalinauskas*, 151 F.R.D. at 364-366 (finding that a confidential settlement agreement between defendant employer and a former employee could not prevent a plaintiff in a sexual discrimination suit from deposing the former employee regarding her employment and any knowledge of sexual harassment); *Hamad v. Graphic Arts Center, Inc.*, 1997 WL 12955 at * 1 -2 (D. Oregon Jan 3, 1997) (finding that confidentiality and non-disparagement provisions of settlement agreement between defendant employer and former employee were against public policy and, therefore, void to the extent they prohibited the former employee from testifying in deposition in plaintiff's Title VII action).

As one district court observed, "[t]he Federal Rules of Civil Procedure's liberal discovery rules trump private party agreements seeking to limit available information." *Kelly v. Romines*, 2012 WL 681806 at * 6 (D. N. M. Feb. 27, 2012). Here, the Court finds that, to the extent the non-cooperation and non-disparagement provisions of the Severance Agreement prevent Brand from testifying about factual matters relevant to Gard's claims in the instant lawsuit, these specific provisions are void as against public policy. *See, e.g., Kalinauskas*, 151 F.R.D. at 367; *Williams*,

2016 WL 1146885 at * 3; *Channelmark Corp*., 2000 WL 968818 at * 5; *Wendt,* 1996 WL 84668 at * 2; *Hamad,* 1997 WL 12955 at * 2.   While settlement agreements frequently benefit society, public policy weighs in favor of enforcing Gard's subpoena as Brand's testimony is clearly likely to lead to the discovery of evidence that is highly relevant to Gard's claims.  Moreover, Grand River has not sufficiently shown that it will suffer any specific prejudice or harm if Brand is permitted to testify.[2]

Nonetheless, in order to protect the confidentiality of the Severance Agreement, the Court orders as follows.  Brand's deposition testimony shall be subject to a Protective Order, to be jointly drafted by the parties and submitted to this Court for approval prior to Brand's deposition.  *See Hamad,* 1997 WL 12955 at * 2 ("The parties shall attempt to jointly draft a stipulated protective order requiring the confidentiality of Gruse's deposition testimony and restricting its use to this action and any other action in which Gruse has been subpoenaed."); *Channelmark Corp*., 2000 WL 968818 at * 5 (in enforcing subpoena issued to third party witness, noting that "[t]he matter is governed by a

---

[2] Grand River's reliance on *Shaheen v. The B.F. Goodrich Company,* 873 F.2d 105 (6th Cir. 1989) and *Flynn v. Portland General Electric Corp.,* 1989 WL 112802 (D. Oregon Sept. 21, 1989) is misplaced.  In *Shaheen*, the plaintiff brought an employment discrimination suit against her former employer despite the fact that she had previously signed a release of claims.  *Shaheen*, 873 F.2d at 106.  The district court granted summary judgment in defendant's favor on the grounds that the release barred plaintiff's claims.  *Id.* Plaintiff appealed, arguing that waivers of employment-related discrimination claims are void as against public policy.  *Id.*  The Sixth Circuit rejected plaintiff's argument and affirmed judgment in defendant's favor.  *Shaheen* did not address (or even remotely consider) the enforceability of non-cooperation and/or non-disparagement provisions in the context of a Rule 45 subpoena and, thus, is not relevant to the instant motion.  In *Flynn*, the plaintiffs subpoenaed a third-party attorney who had been involved in the negotiation of a confidential settlement agreement in a separate action by other former employees against the defendant employer.  *Flynn*, 1989 WL 112802 at * 1.  Specifically, the plaintiffs sought to take the attorney's deposition and inspect all discovery materials provided by the defendant employer in the separate action.  *Id.* The district court found that the plaintiffs had not shown a sufficient need for the subpoenaed information, finding that "the facts in the [separate action] and the facts in this action are sufficiently distinguishable that discovery regarding [the separate action] is not likely to ease the task of the court or speed up resolution of this action."  *Id.* at *2.  Here, Gard does not seek to discover facts and evidence regarding lawsuits brought by other individuals against Grand River for alleged discrimination and/or violations of ERISA.  Rather, Gard seeks to depose Brand regarding Brand's personal knowledge of factual matters directly relevant to Gard's claims, including Brand's knowledge of Gard's work performance and the timing and content of conversations he (Brand) had with Chaplin regarding Chaplin's concerns about the cost of Gard's healthcare. Thus, *Flynn* is also distinguishable.

protective order" and, therefore, "the information Hasan discloses will only be used for purposes of this litigation.").

Finally, Gard asks that the Court provide "clear guidance regarding the scope of Brand's testimony."  (Doc. No. 52 at p. 5.)  The Court hereby orders that Brand shall truthfully answer any and all questions regarding his personal knowledge of (1) Gard's work performance while employed at Grand River, and (2) the timing and content of alleged statements by Chaplin regarding the cost of Gard's healthcare.  To the extent the Severance Agreement purports to impose any penalties on Brand for testimony regarding these issues, those penalties shall not apply to the disclosure of this information for discovery purposes in furtherance of Gard's claims. *See Williams*, 2016 WL 11468885 at * 4 ("To the extent that the Separation Agreement imposes any penalties on Kisner and Rogers for the discussion of their past employment claims or purported employment claims, those penalties shall not apply to the disclosure of information for discovery purposes in furtherance of plaintiffs' claims."); *Kalinauskas*, 151 F.R.D. at 367 ("Although the terms of the confidential settlement agreement impose penalties upon Ms. Thomas for discussing her past employment at Caesars, those penalties shall not apply to the disclosure of information for discovery purposes in furtherance of Kalinauskas' case.").

Accordingly, and for all the reasons set forth above, Gard's Motion to Compel Jason Brand to Comply with Fed. R. Civ. P. 45 Subpoena (Doc. No. 48) is granted as set forth above.

**B.      Document Request relating to Grand River's Communications with Brand**

The Court next considers the Position Papers submitted by the parties regarding a dispute over the discoverability of certain written communications between counsel for Grand River and counsel

for Brand.  Specifically, on November 20, 2020, Gard served the following document request on Grand River:

> Please produce any emails, letters, text messages, memoranda, or any other correspondence or ESI exchanged between Defendant (including, but not limited to, its employees or attorney(s)) and Brand (including, but not limited to, his attorney(s) from July 16, 2020 to the present regarding in any way Brand's involvement in Plaintiff's action against Defendant.

Plaintiff's December 30, 2020 Position Paper (Exh. 1.)  Gard asserts that he served this document request "to determine if Defendant had recently sought to enforce its Severance and General Release of Claims Agreement . . . against Brand in order to dissuade Brand from appearing for deposition, influence the nature of his testimony, or otherwise block Plaintiff's access to the facts underlying Plaintiff's lawsuit against Defendant."  *See* Plaintiff's December 30, 2020 Position Paper at p.2.  On December 22, 2020, Grand River responded to the above document request, as follows:

> Objection.  Defendant incorporates all objections, briefs, and other discovery objections previously made regarding Brand. Confidential and privileged. Attorney-client privilege. Attorney work product. *Randleman v. Fid. Nat'l Title Ins. Co.,* 251 F.R.D. 281, 285 (N.D. Ohio 2008).

Plaintiff's December 30, 2020 Position Paper (Exh. 2.)

On December 30, 2020, the parties submitted contemporaneous Position Papers regarding this dispute.  In his Position Paper, Gard argues that Grand River waived its objection to the document request at issue because it failed to timely respond.  *See* Plaintiff's December 30, 2020 Position Paper at p. 2.  Specifically, Gard asserts that, pursuant to Fed. R. Civ. P. 34(b)(2)(A), Grand River's response was due thirty days after the November 20, 2020 document request (i.e., on December 21, 2020) but that Grand River did not respond until December 22, 2020.  *Id.*

Gard next asserts that, even if timely, Grand River's objection is without merit because the requested documents are not protected by the work product doctrine.  *Id.* at p. 3.  Specifically, Gard

asserts that he "took care to seek only external communication[s] that Defendant's counsel had with Brand's counsel" and that "it simply makes no sense that, after receiving Brand's Declaration (which included several averments that are damaging to Defendant's position) Defendant would then disclose its confidential strategies and mental impressions related to the defense of this case to Brand's counsel."  *Id*.  Gard further argues that the work product privilege would not cover communications between Grand River's counsel and Brand's counsel after July 2020 because "there is clearly an adversarial relationship between Defendant and Brand."  *Id*. at p. 4.  Gard next argues that *Randleman, supra* is distinguishable because the requested documents are not related to the development of a witness's written statement.  *Id*. at pp. 4-5.  Finally, Gard asserts that the requested documents are relevant because they (1) "would likely reflect on Brand's motivations, biases, and prejudices at deposition and potentially at trial;" and (2) "could serve as evidence that Defendant is seeking to conceal the facts of Plaintiff's case."  *Id*. at p. 5.

In response, Grand River argues that the requested communications are protected attorney work product because "there are no set of facts within the communication request outside of discussion of the meaning of the terms of the Severance Agreement, the duties of each party with the Severance Agreement, and counsel's thoughts and opinions."  *See* Defendant's Position Paper at p. 2.  Grand River asserts that the communications at issue were "prepared in anticipation of litigation and there is no substantial need for Plaintiff to have this information."  *Id*.  Grand River complains that Gard withheld drafts of the Brand Declaration and emails between Gard's counsel and Brand's counsel, and that requiring Grand River to disclose its communications with Brand's counsel would be "an inconsistent application of the discovery process."  *Id*.  Lastly, Grand River argues that the documents at issue are protected by the "common interest" doctrine.  *Id*.

In order to assist the Court in resolving this issue, Grand River submitted the responsive documents in its possession to the Court for *in camera* inspection.  These documents consist of three exhibits consisting of emails between counsel for Grand River and counsel for Jason Brand, dated between September and November 2020.  The primary question before this Court is whether these email communications between counsel for Grand River and counsel for Brand constitute attorney work product.

An attorney's work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways...."  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  Work product is protected to ensure that a lawyer can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."  *Id.* at 510-11.  Fed. R. Civ. P. 26(b)(3) governs attorney work product and provides as follows:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A) & (B).

19

In determining whether a document is protected by the work product doctrine because it was "in anticipation of litigation" or for trial the Court must consider: "(1) whether that document was prepared because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co*., 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)).  *See also Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co*., 2013 WL 607969 at *9 (S.D. Ohio Feb. 19, 2013) *adopted by* 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014) (it is not sufficient to state that a communication generally relates to litigation to warrant work product protection; the communication must have been "prepared in anticipation of litigation or for trial."). The Court must determine the "driving force behind the preparation of each requested document" in assessing whether the document is protected as work product.  *Roxworthy,* 457 F.3d at 595.

Documents that are protected as work product may still be discoverable if the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(A).  While "fact" work product may be discoverable upon such a showing, "opinion" work product is entitled to near absolute protection against disclosure. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig*., 293 F.3d 289, 294 (6th Cir. 2002).  "[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted)).

For the following reasons, the Court finds that documents submitted by Grand River for *in camera* inspection do not constitute attorney work product.  The Court will discuss each exhibit separately, below.

1. **Exhibit 1**

Exhibit 1 is an email dated November 5, 2020 from counsel for Grand River (James Reagan) to counsel for Jason Brand (Jason Bristol).  Therein, Mr.  Reagan advises Mr. Bristol that the Court held a conference call to discuss the discoverability of the Severance Agreement and that Gard intends to go forward with his subpoena of Brand.  In addition, Mr. Reagan asks Mr. Bristol to call him.

Grand River has not sufficiently explained why it believes this email constitutes attorney work product.  There is no indication from the face of the document that it was prepared in anticipation of litigation within the meaning of Rule 26(b)(3), nor does it contain any mental impressions, thoughts, or opinions of counsel.   Rather, this email simply conveys factual information to Mr. Bristol regarding the status of the instant litigation and requests that Mr. Bristol call him to discuss.   The Court finds that Grand River has failed to demonstrate that Exhibit 1 constitutes attorney work product.

2. **Exhibit 3**

Exhibit 3 consists of a chain of 12 emails between Mr. Reagan and Mr. Bristol, dated between September 9, 2020 and October 8, 2020.  These emails relate solely to the scheduling of Brand's deposition in response to Grand River's subpoena.  Several of these emails also copy counsel for Gard, Jack Moran.

Grand River has not demonstrated that any of the emails in Exhibit 3 constitute attorney work product.  Like Exhibit 1, there is no indication that any of these emails were prepared in anticipation

21

of litigation within the meaning of Rule 26(b)(3), nor do any of these emails contain any mental impressions, thoughts, or opinions of counsel for Grand River. Accordingly, the Court finds that Grand River has failed to demonstrate that Exhibit 3 constitutes attorney work product.

### 3. Exhibit 2

Exhibit 2 is of a more substantive nature. Specifically, this Exhibit consists of a chain of four emails between Mr. Bristol and a different attorney for Grand River, Stuart Cordell. In the first email, dated October 23, 2020, Mr. Bristol advises Mr. Cordell that Brand received a deposition subpoena from Gard, and inquires how Grand River proposes that Brand "handle the subpoena" in light of the Severance Agreement. The remaining emails (dated between October 26, 2020 and November 2, 2020) consist of messages back and forth between Mr. Cordell and Mr. Bristol regarding this issue. The tone of these emails is decidedly adversarial.

Grand River argues that these emails constitute attorney work product under *Randleman v. Fid. Nat'l Title Ins. Co.,* 251 F.R.D. 281 (N.D. Ohio 2008) (Carr, J.) because they contain Grand River's counsel's thoughts, opinions, and impressions regarding the meaning of the terms of the Severance Agreement and the duties of each party to that Agreement in the context of responding to the subpoena. In *Randleman*, plaintiffs asked defendant to produce all drafts of the agent, broker, and lender affidavits submitted by defendant in support of its brief in opposition to plaintiffs' motion for class certification. Plaintiffs also asked defendant to produce counsel correspondence between defendant and these agents, brokers, and lenders pertaining to the affidavits. Defendant objected on the basis of attorney-client privilege and attorney work product. After a thorough analysis, the district court agreed with defendant that the draft affidavits (and counsel communications relating thereto) constituted attorney work product because they "developed through witness and counsel discussions,

22

reflect defense strategy, and reveal mental impressions, judgments and thought processes of defense counsel." *Id.* at 285, 287.

The Court agrees with Gard that *Randleman* does not apply to the counsel communications at issue herein.[3]  As noted above, in *Randleman*, the draft affidavits and counsel communications reflected a collaborative process between defense counsel and the third-party witnesses in the context of preparing evidence for use in that litigation.  The communications between Grand River's counsel and Brand's counsel are of a very different nature.   As noted above, the emails between counsel for Grand River and counsel for Brand are adversarial in both posture and tone.  They relate to the issue of whether Brand's participation in the instant litigation would constitute a breach of the Grand River's and Brand's Severance Agreement, and do not relate to (or reflect in any way) Grand River's counsel's thoughts, opinions or strategies regarding Gard's underlying claims in the instant action.  Thus, the Court finds that *Randleman* is distinguishable from the instant case and does not support Grand River's argument that the communications at issue constitute attorney work product.[4]

Moreover, Grand River has failed to cite any binding authority indicating that, under the particular circumstances presented, the communications at issue do, in fact, constitute attorney work product.  Indeed, the Court is not convinced that they do.  As Gard notes, the communications at issue occurred well after Brand executed both the Declaration and the Severance Agreement.  Gard has not sought to discover any communications (whether internal or external) regarding the drafting of, or

---

[3] The Court declines to reach Gard's argument that Grand River technically waived any objections to Gard's document request because it served its response one day late.  The Court prefers to resolve this issue on the merits.

[4] Contrary to Grand River's argument, the Court's interpretation of *Randleman* does not constitute an "inconsistent application of the discovery process."  The documents withheld by Gard specifically pertained to the evolution of Brand's Declaration and, therefore, fall precisely within the category of documents that the court in *Randleman* found to be attorney work product.

negotiations regarding, the Severance Agreement. Rather, Gard only seeks production of communications from July 2020 to the present regarding "Brand's involvement in Plaintiff's action against Defendant." Grand River has simply failed to demonstrate that these communications constitute attorney work product within the meaning of Rule 26(b)(3).

Even assuming, however, that the communications at issue do, in fact, constitute attorney work product, the Court agrees with Gard that they are nonetheless discoverable because Grand River waived any work product protection with respect thereto. Under certain circumstances, a party may waive a claim under the work-product doctrine. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 304. *See also New Phoenix Sunrise Corp. v. CIR*, 408 Fed. Appx. 908, 917 (6th Cir. 2010) ("Both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties.") Because the purpose of the work product doctrine is to protect the relevant work "from falling into the hands of an adversary," disclosure of protected materials to a third-party will often waive the protection of the work product doctrine. *See In re Chevron Corp.*, 633 F.3d 153, 165 (3rd Cir. 2011). Thus, the Sixth Circuit has held that a party may forfeit work product protection where the initial waiver is to an adversary. *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 306.

The Court finds that, to the extent the communications at issue constitute or contain attorney work product, Grand River waived any claim to work product protection by disclosing this information to Brand's counsel.[5] Brand is not a party to the instant action, and it is clear from the

---

[5] The Court notes that the opinions expressed by counsel for Grand River in the emails at issue regarding Brand's alleged duties under the Severance Agreement are also repeated in Grand River's Brief in Opposition to Gard's Motion to Compel. *See* Doc. No. 49 at p. 4, 5, 6.

content and tone of Exhibit 3 that Grand River and Brand were in an adversarial posture at the time

of the emails in question.  Under these circumstances, Grand River's voluntary disclosure to Mr.

Bristol of its counsel's opinions regarding the meaning and scope of the terms of the Severance

Agreement in the context of Brand's deposition subpoena, waived any work product protection to

which Grand River otherwise may have been entitled. [6]

Accordingly, and for all the reasons set forth above, the Court orders Grand River to produce

the documents it submitted to this Court for *in camera* inspection to Gard by no later than seven (7)

days from the date of this Order.

### C.    Attorney Fees and Expenses

Lastly, Gard asks the Court "to hold in abeyance any determination as to who is responsible

for the payment of expenses and attorney fees, until further information is obtained about what

necessitated this Motion."  (Doc. No. 48-1 at p. 8.)  The Court agrees and will hold this issue in

---

[6] The Court also rejects Grand River's argument that the counsel communications at issue are protected under the common-interest doctrine.  Under this doctrine, attorneys or parties facing a common litigation opponent may exchange privileged communications without waiving the privilege.  *Travelers Case. & Sur. Co. v. Excess Ins. Co. Ltd.,* 197 F.R.D. 601, 606-607 (S.D. Ohio 2000) (citing *United States v. Under Seal,* 902 F.2d 244, 249 (4th Cir.1990)).  The purpose behind this rule is "to protect the free flow of information from [the] client to [the] attorney" when a number of clients share a common interest in litigation.  *Id.* (quoting *United States v. Schwimmer,* 892 F.2d 237, 243–44 (2d Cir.1989)).  The rule applies when the parties have a "common litigation opponent" or when information is exchanged between "friendly litigants" with similar interests.  *Id. See also Cooey v. Strickland,* 269 F.R.D. 643, 652 (S.D. Ohio 2010) ("The exception typically arises when the parties are either represented by the same attorney or are individually represented but have the same goal in litigation.")  "The common interest privilege is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Broessel v. Triad Guar. Ins. Corp.,* 238 F.R.D. 215, 219 (W.D. Ky. 2006)*; see also John B. v. Goetz,* 879 F. Supp. 2d 787, 897–98 (M.D. Tenn. 2010) (citations omitted).  The Court finds that the common interest rule is not applicable herein.  As an initial matter, application of the common interest doctrine presupposes that the documents at issue are privileged; however, Grand River has failed to demonstrate that the emails in question are either attorney client privileged or work product.  However, even assuming *arguendo* that the communications at issue are privileged, Grand River has failed to demonstrate that it and Brand are "friendly litigants" facing a "common litigation opponent."  This is particularly the case in light of the adversarial tone of the emails between counsel for Grand River and Brand, and the fact that Brand willingly provided a Declaration to Gard and has not opposed Gard's subpoena.  Accordingly, the Court finds that Grand River has failed to demonstrate that the documents at issue are protected from disclosure by the common interest rule.

abeyance pending the filing, if necessary, of an appropriate and well-supported Motion for Attorney Fees and Expenses.

## IV.    Conclusion

For all of the foregoing reasons, Plaintiff's Motion to Compel Jason Brand to Comply with Plaintiff's Rule 45 Subpoena (Doc. No. 48) is GRANTED.  Brand's deposition testimony shall be subject to a Protective Order, to be jointly drafted by the parties and submitted to this Court for approval prior to Brand's deposition.  As set forth in this Order, Brand shall truthfully answer any and all questions regarding his personal knowledge of (1) Gard's work performance while employed at Grand River, and (2) the timing and content of alleged statements by Chaplin regarding the cost of Gard's healthcare.  To the extent the Severance Agreement purports to impose any penalties on Brand for testimony regarding these issues, those penalties shall not apply to the disclosure of this information for discovery purposes in furtherance of Gard's claims.  In addition, the Court finds Plaintiff's December 30, 2020 Position Paper to be well-taken and orders Defendant to produce the documents submitted to this Court for *in camera* inspection to Plaintiff no later than seven (7) days from the date of this Order.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
Date: January 8, 2021          U. S. DISTRICT JUDGE

26